1   LATHAM & WATKINS LLP
    Stephen P. Swinton (Bar No. 106398)
2   steve.swinton@lw.com
    Adam A. Welland (Bar No. 228680)
3   adam.welland@lw.com
    12636 High Bluff Drive, Suite 400
4   San Diego, California 92130-2071
    Telephone: (858) 523-5400
5   Facsimile: (858) 523-5450

6   Attorneys for Plaintiff,
    GEORGIA-PACIFIC CONSUMER PRODUCTS LP

7

8              IN THE UNITED STATES DISTRICT COURT

9          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10  GEORGIA-PACIFIC CONSUMER            ) Civil Action No. 07 CV 2390 JAH POR
    PRODUCTS LP, a Delaware limited     )
11  partnership,                        ) MEMORANDUM OF POINTS AND
                                        ) AUTHORITIES IN SUPPORT OF
12              Plaintiff,              ) PLAINTIFF GEORGIA-PACIFIC
                                        ) CONSUMER PRODUCTS LP'S *EX*
13       v.                             ) *PARTE* APPLICATION FOR A
                                        ) TEMPORARY RESTRAINING ORDER
14  YAN WHOLESALE; RUSH WHOLESALE;      ) AND ORDER TO SHOW CAUSE RE:
    YES WHOLESALE; YES WHOLESALE OF     ) PRELIMINARY INJUNCTION
15  MEXICO; ALLEN YAN CHOW, an          )
    individual; ROMAN RUSHINSKY, an     ) DATE:   TBD
16  individual; GLEB TABACHNIK, an      ) TIME:   TBD
    individual; JOHN YEH, and individual; and ) CTRM: TBD
17  DOES 1 – 100,                       )
                                        )
18              Defendants.             )
                                        )
19                                      )
                                        )
20  _____ )

21

22

23

24

25

26

27

28

FILED

07 DEC 20 AM 11: 46

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ..............................................................................................1

II.   BACKGROUND ...............................................................................................3

    A.    Georgia-Pacific's **ANGEL SOFT®** Federally Registered
        Trademarks .............................................................................................3

    B.    Sales of Georgia-Pacific's **ANGEL SOFT®** Brand Bathroom
        Tissue......................................................................................................4

    C.    Georgia-Pacific's Extensive Advertisement and Promotion of the
        **ANGEL SOFT®** Product Line.............................................................5

    D.    Defendants' Sale and Distribution of Confusingly Similar "Angel"
        Bathroom Tissue.....................................................................................6

III.  STANDARD FOR RELIEF ..............................................................................9

IV.   ARGUMENT.....................................................................................................10

    A.    Georgia-Pacific Is Likely to Succeed on the Merits of Its
        Trademark Infringement Claim ..............................................................10

        1.    Georgia-Pacific Owns the **ANGEL SOFT** Trademarks at
            Issue ...........................................................................................11

        2.    Defendants' Use of Confusingly Similar Marks Is
            Unauthorized .............................................................................11

        3.    There Is a Likelihood of Confusion Between Georgia-
            Pacific's **ANGEL SOFT®** Bathroom Tissue and
            Defendants' "Angel" Bathroom Tissue.....................................12

            a.    The Strength of Georgia-Pacific's **ANGEL SOFT**
                Trademarks .......................................................................12

            b.    Proximity or Relatedness of the Goods .........................13

            c.    Similarity of the **ANGEL SOFT** Trademarks and
                the "Angel" Marks and Images .....................................14

            d.    Actual Confusion.............................................................15

            e.    Marketplace Factors .......................................................15

            f.    The Types of Goods and Purchaser Care .......................15

            g.    Defendants' Intent In Choosing the Marks and
                 Images for the "Angel" Bathroom Tissue .....................16

            h.    Likelihood of Expansion of Products ...........................17

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

1   B. Georgia-Pacific Also Is Likely to Prevail Upon Its Other Claims ......................17

2     1. Georgia-Pacific Is Likely to Prevail in Its Trade Dress
       Claim ...................................................................................................17

3

4     2. Georgia-Pacific Is Likely to Prevail in Its False Designation
       of Origin Claim...................................................................................19

5     3. Georgia-Pacific Is Likely to Prevail in Its Unfair
       Competition Claim .............................................................................19

6

7   C. Georgia-Pacific Has Established Irreparable Injury as a Result of
    Defendants' Conduct ...........................................................................................20

8   D. The Balance of Hardships Favors Granting Preliminary Injunctive
    Relief ...................................................................................................................21

9

10   E. Preliminary Injunctive Relief Would Serve the Public Interest ..........................22

 V. CONCLUSION ..............................................................................................................22

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS NSD\90799.1
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY

ii

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

1

**TABLE OF AUTHORITIES**

2                                                                              **Page(s)**

**FEDERAL CASES**

3

4

*AMF, Inc. v. Sleekcraft Boats,*
    599 F.2d 341 (9th Cir. 1979) ...............................................................12, 13, 15, 17

5

*Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.,*
    944 F.2d 1446 (9th Cir. 1991) ...............................................................................20

6

7

*Allegheny Car Wash Corp. v. Amoco Oil Co.,*
    201 U.S.P.Q. 798 (W.D. Pa. 1977)........................................................................19

8

*Beer Nuts v. Clover Club Foods Co.,*
    805 F.2d 920 (10th Cir. 1986) ...............................................................................16

9

10

*Big Country Foods, Inc. v. Bd. of Educ.,*
    868 F.2d 1085 (9th Cir. 1989)..................................................................................9

11

*Brookfield Commc'n, Inc. v. W. Coast Entertainment Co.,*
    174 F.3d 1036 (9th Cir. 1999) .................................................10, 11, 12, 13, 15, 16

12

13

*CSC Brands LP v. Herdez Corp.,*
    191 F. Supp. 2d 1145 (E.D. Cal. 2001) ..................................................................10

14

*Century 21 Real Estate Corp. v. Sandlin,*
    846 F.2d 1175 (9th Cir. 1988)................................................................................20

15

16

*Clamp Mfg. Co. v. Enco Mfg. Co.,*
    870 F.2d 512 (9th Cir. 1989)..................................................................................18

17

*Cleary v. News Corp.,*
    30 F.3d 1255 (9th Cir. 1994)..................................................................................19

18

19

*Clicks Billiards, Inc. v. Sixshooters, Inc.,*
    251 F.3d 1252 (9th Cir. 2001).........................................................................17, 18

20

*Duncan McIntosh Co. v. Newport Dunes Marina LLC,*
    324 F. Supp. 2d 1078 (C.D. Cal. 2004) ..................................................................10

21

22

*E & J Gallo Winery v. Gallo Cattle Co.,*
    967 F.2d 1280 (9th Cir. 1992).........................................................................15, 16

23

*Edward J. Sweeney & Sons, Inc. v. Texaco Inc.,*
    637 F.2d 105 (3d Cir. 1989)...................................................................................19

24

25

*Electropix v. Liberty Livewire Corp.,*
    178 F. Supp. 2d 1125 (C.D. Cal. 2001) ..................................................................10

26

*Glow Indus. v. Lopez,*
    273 F. Supp. 2d 1095 (C.D. Cal. 2003) ..................................................................12

27

28

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

*GoTo.com, Inc. v. Walt Disney Co.,*
    202 F.3d 1199 (9th Cir. 2000) ..................................................9, 10, 12, 20, 21

*Granny Goose Foods, Inc. v. B'hood of Teamsters,*
    415 U.S. 423 (1974) ...........................................................................9

*Honor Plastic Indus. Co. LTD v. Lollicup USA, Inc.,*
    466 F. Supp. 2d 1217 (E.D. Cal. 2006) .................................................10

*Kwik-Site Corp. v. Clear View Mfg. Co.,*
    758 F.2d 167 (6th Cir. 1985) ..............................................................19

*Levi Strauss & Co. v. Bluebell, Inc.,*
    778 F.2d 1352-54 (9th Cir. 1985).........................................................18

*Lindy Pen Co v. Bic Pen Corp.,*
    796 F.2d 254 (9th Cir. 1986) ..............................................................13

*Litton Sys. Inc. v. Whirlpool Corp.,*
    728 F.2d 1423 (Fed. Cir. 1985) ...........................................................19

*Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.,*
    887 F. Supp. 1320 (N.D. Cal. 1995).......................................................9

*Lois Sportswear U.S.A., Inc. v. Levi Strauss Co.,*
    799 F.2d 867 (2d Cir. 1986) ...............................................................15

*Los Angeles Unified Sch. Dist. v. U.S. Dist. Ct.,*
    650 F.2d 1004 (9th Cir. 1981) .............................................................9

*Meta-Film Assoc., Inc. v. MCA, Inc.,*
    586 F. Supp. 1346 (C.D. Cal. 1984)......................................................20

*Metropo. Publishing, Ltd. v. San Jose Mercury News,*
    987 F.2d 637 (9th Cir. 1993) ..............................................................20

*Nat'l Center for Immigrants Rights, Inc. v. INS,*
    743 F.2d 1365 (9th Cir. 1984)..............................................................9

*New West Corp. v. NYM Co.,*
    595 F.2d 1194 (9th Cir. 1979) .............................................................19

*Nutri/System, Inc. v. Con-Stan Indus., Inc.,*
    809 F.2d 601 (9th Cir. 1987) ..............................................................13

*Ocean Garden, Inc. v. Marktrade Co.,*
    953 F.2d 500 (9th Cir. 1991) ..............................................................12

*Pac. Telesis v. Int'l Telesis Comm'cns,*
    994 F.2d 1364 (9th Cir. 1993) .............................................................17

*Pacific Law Center v. Saadat-Nejad,*
    2007 WL 2005257 (S.D. Cal. Apr. 27, 2007) .........................................10

LATHAM&WATKINS<sup>LLP</sup>    NSD\90799.1
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY

iv

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

*Phillip Morris USA Inc. v. Shalabi,*
  352 F. Supp. 2d 1067 (C.D. Cal. 2004) ......................................................22

*Qualitex Co. v. Jacobsen Prods. Co.,*
  13 F.3d 1287 (9th Cir. 1994) .....................................................................19

*Qualitex Co. v. Jacobsen Prods. Co.,*
  514 U.S. 159 (1995) .................................................................................18

*Rent-A-Center, Inc. v. Canyon Television & Appliance,*
  944 F.2d 597 (9th Cir. 1991) .....................................................................20

*Sharper Image Corp. v. Target Corp.,*
  425 F. Supp. 2d 1056 (N.D. Cal. 2006) .....................................................18

*Southwest Voter Registration Educ. Project v. Shelley,*
  344 F.3d 914 (9th Cir. 2003) .......................................................................9

*Sports Form, Inc. v. United Press Int'l, Inc.,*
  686 F.2d 750 (9th Cir. 1982) .....................................................................10

*Sun Microsystems, Inc. v. Microsoft Corp.,*
  188 F.3d 1115 (9th Cir. 1999) .....................................................................9

*Thelen Oil Co., Inc. v. Fina Oil & Chem. Co.,*
  962 F.2d 821 (8th Cir. 1992) .....................................................................19

*Two Pesos, Inc. v. Taco Cabana, Inc.,*
  505 U.S. 763 (1992) .................................................................................18

*Woodrow F. Morgan, Inc. v. United States,*
  670 F. Supp. 289 (E.D. Cal. 1987) ..............................................................9

**FEDERAL STATUTES**

15 U.S.C. § 1065 .........................................................................................4

15 U.S.C. § 1114(1) ...................................................................................10

15 U.S.C. § 1125(a) ...................................................................................19

**STATE STATUTES**

Cal. Bus. & Prof. Code § 14281 ...................................................................7

Cal. Bus. & Prof. Code § 14282 ...................................................................7

Cal. Bus. & Prof. Code § 17200 ............................................................19, 20

LATHAM&WATKINS   NSD\90799.1
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY

v.

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

# I.    INTRODUCTION

1

2          Plaintiff Georgia-Pacific Consumer Products LP ("Georgia-Pacific") is a world leader in

3    the manufacturing and marketing of tissue products, among a variety of other products.  Among

4    these products are **ANGEL SOFT®** and **ANGEL SOFT PS®** brands of bathroom tissue.

5    Through Georgia-Pacific's substantial advertising and quality control programs, consumers have

6    come to associate the **ANGEL SOFT®** and **ANGEL SOFT PS®** brands of bathroom tissue

7    with Georgia-Pacific and its corresponding reputation for quality products.  As a result of

8    Georgia-Pacific's significant investment of time, money, and effort, the **ANGEL SOFT®** and

9    **ANGEL SOFT PS®** brands have enjoyed enormous success.  Total retail sales of **ANGEL**

10   **SOFT®** and **ANGEL SOFT PS®** products exceed many hundreds of millions of dollars.

11          As part of its effort to protect these successful brands, Georgia-Pacific and its

12   predecessors in interest applied for and obtained several federally registered trademarks

13   containing the words "Angel Soft."  Georgia-Pacific has used the **ANGEL SOFT®** name and its

14   related trademarks to identify its bathroom tissue products since 1944.  Through continuous use

15   and notoriety, some of these trademarks have become both famous and incontestable.  Equally

16   important, the **ANGEL SOFT®** and **ANGEL SOFT PS®** trademarks have become

17   extraordinarily valuable as identifiers of Georgia-Pacific and its bathroom tissue products.

18          Georgia-Pacific recently became aware that Defendants Yan Wholesale, Rush Wholesale,

19   Yes Wholesale, Yes Wholesale of Mexico, Allen Yan Chow, Roman Rushinsky, Gleb

20   Tabachnik, and John Yeh (collectively "Defendants") are distributing, marketing, and selling a

21   variety of bathroom tissue products in retail and wholesale locations in Southern California,

22   including within the County of San Diego and through the internet, under the name "Angel."

23          Defendants' inferior-quality "Angel" products bear marks and images that are

24   confusingly similar to the **ANGEL SOFT®** and **ANGEL SOFT PS®** trademarks.  Defendants'

25   use of the word "Angel" in their product labeling is inherently misleading and suggests an

26   affiliation with Georgia-Pacific's superior, and well-known **ANGEL SOFT®** bathroom tissue

27   products.  Indeed, Defendants' selection of "Angel"—an arbitrary mark that has no intrinsic

28

LATHAM&WATKINS™  NSD\90799.1
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY                                1

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

1    meaning when used in connection with bathroom tissue products—reveals Defendants' intention

2    to capitalize upon Georgia-Pacific's goodwill.

3        Furthermore, the striking similarities in packaging appearance between Defendants'

4    "Angel" products and Georgia-Pacific's **ANGEL SOFT®** products renders consumer confusion

5    between the two product lines inevitable.  In particular, Defendants' "Angel" product employs

6    lettering that is virtually identical in appearance to the lettering used on **ANGEL SOFT®**

7    packaging.  Moreover, Defendants' "Angel" product packaging includes the image of an winged-

8    infant or cherub, located just above the product label, which is highly suggestive of the infant

9    image, also located just above the **ANGEL SOFT®** product label, which has long been

10   employed by Georgia-Pacific to identify the **ANGEL SOFT®** brand.

11       A side-by-side comparison of the infringing "Angel" product and Georgia-Pacific's

12   **ANGEL SOFT®** bathroom tissue, which illustrates these similarities in product labeling and

13   packaging design, is shown below:

14

15              

16

17

18

19

20       The remarkable similarities of Defendants' "Angel" bathroom tissue labeling and

21   packaging to Georgia-Pacific's **ANGEL SOFT®** branded products will certainly confuse

22   consumers.  This confusion of Georgia-Pacific's **ANGEL SOFT®** and **ANGEL SOFT PS®**

23   bathroom tissue customers and the diversion of Georgia-Pacific's sales to the "Angel" product

24   undoubtedly will disappoint customers and irreparably harm Georgia-Pacific and its reputation

25   for quality bathroom tissue products.  Accordingly, Georgia-Pacific brings this application for a

26   temporary restraining order to avoid the inevitable irreparable harm that Defendants'

27   importation, distribution, marketing, and sales of their "Angel" bathroom tissue will bring to

28   Georgia-Pacific's reputation and goodwill.

## II.    BACKGROUND

### A.    Georgia-Pacific's ANGEL SOFT® Federally Registered Trademarks

Through its predecessors in interest, Georgia-Pacific first developed and began using the **ANGEL SOFT®** brand in 1944 in connection with its bathroom tissue products.  Declaration of Andrew Towle ("Towle Decl.") ¶ 3.  Georgia-Pacific and its predecessors in interest have used the **ANGEL SOFT®** mark as such continuously since that time.  *Id.* ¶ 4.  The picture shown in below depicts the current product configuration and packaging of a typical **ANGEL SOFT®** retail product:



In 2003, Georgia-Pacific also developed and began using the **ANGEL SOFT PS®** brand for bathroom tissue that it distributes through commercial channels.  *Id.* ¶ 5.  The picture shown below depicts the current product configuration and packaging of a typical **ANGEL SOFT PS®** commercial product:



Georgia-Pacific and its predecessors in interest have applied for and obtained several federally registered Trademarks that protect both its **ANGEL SOFT®** and **ANGEL SOFT PS®** brands of bathroom tissue.  *Id.* ¶ 7.  These trademarks include Registration Numbers 781,414; 1,172,215; 2,512,417; 2,546,897; 2,841,7592,912,982; 2,972,819; and 2,989,711.  *Id.*; Exs. 3-10. For purposes of this Application, and for the sake of brevity and efficiency, Georgia-Pacific

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY

NSD\90799.1

3

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

1  alleges violations only of Registration Numbers 781,414; 1,172,215; 2,512,417; and 2,912,982

2  (collectively referred to herein as the **ANGEL SOFT** Trademarks"), which are described below:

3

| Reg. No. | Mark | Filing Date | Registration Date | Date of First Use |
|---|---|---|---|---|
| 781,414 | ANGEL SOFT | 08/07/1962 | 12/08/1964 | 00/00/1944 |
| 1,172,215 | ANGEL SOFT | 08/13/1979 | 10/06/1981 | 00/00/1944 |
| 2,512,417 | Angel Soft | 11/21/2000 | 11/27/2001 | 05/01/2000 |
| 2,912,982 | ANGEL SOFT PS | 08/26/2003 | 12/21/2004 | 01/31/2003 |

10  *Id.* ¶ 7; Exs. 3-5. In accordance with 15 U.S.C. § 1065, based upon widespread and continuous

11  use, Registration Numbers 781,414 and 1,172,215 have achieved incontestable status.

12     **B.     Sales of Georgia-Pacific's ANGEL SOFT® Brand Bathroom Tissue**

13        Georgia-Pacific sells bathroom tissue under the **ANGEL SOFT** Trademarks in both the

14  retail and commercial channels throughout the United States, including Southern California and

15  the County of San Diego, as well as in Canada and Mexico. *Id.* ¶ 9, 11. **ANGEL SOFT®**

16  bathroom tissue is sold through the retail channel in large retail chain stores such as Wal*Mart,

17  Target, Winn Dixie, and Walgreen's as well as in tens of thousands of independent retail stores

18  located across the country. *Id.* ¶ 11. Georgia-Pacific sells its **ANGEL SOFT PS®** bathroom

19  tissue in the commercial channel to distributors such as US Foodservice, SYSCO, Xpedx, and

20  Lagasse Sweet which then distribute **ANGEL SOFT PS®** to well-known commercial end users

21  such as Hampton Inn, Sheraton Hotels, The Walt Disney Company, Hyatt Hotels and Little

22  Caesar Enterprises, Inc. *Id.*

23        The products sold under the **ANGEL SOFT** Trademarks must meet Georgia-Pacific's

24  rigorous standards of quality. *Id.* ¶ 19. As a result, Georgia-Pacific endures significant expense

25  to ensure that its products sold under the **ANGEL SOFT** Trademarks adhere to high quality

26  standards. Some examples of the quality control efforts in place by Georgia-Pacific include, but

27  are not limited to: measuring and controlling the quality of the base sheet of the bathroom tissue

28

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY          NSD\90799.1

4

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

1   during production; measuring and recording the finished bathroom tissue rolls at least once per

2   day per manufacturing line; conducting periodic workmanship audits of the bathroom tissue

3   itself as well as the packaging, box and pallet; and conducting softness panels to judge sensory

4   softness. *Id.*

5        Due in part to the distinctive and widely recognized **ANGEL SOFT** Trademarks and

6   trade dress and these products' superior quality, Georgia-Pacific's **ANGEL SOFT®** and

7   **ANGEL SOFT PS®** brands of bathroom tissue have been extremely successful.  Since the

8   **ANGEL SOFT®** brand launch in 1944, Georgia-Pacific has sold several hundred million

9   wrappers of **ANGEL SOFT®** branded bathroom tissue bearing the Georgia Pacific trade dress,

10  generating many hundreds of millions of dollars in retail sales. *Id.* ¶¶ 9, 10.  By way of example,

11  from 2004 through 2006 alone, U.S. sales of bathroom tissue sold under the **ANGEL SOFT**

12  Trademarks totaled over $2 billion. *Id.*  In addition, according to AC Nielsen market share data

13  for the year ending September 08, 2007, the **ANGEL SOFT®** brand of bathroom tissue ranked

14  second overall in total dollar sales. *Id.* ¶ 18; Ex. 18.  In short, Georgia-Pacific's sales of

15  **ANGEL SOFT®** and **ANGEL SOFT PS®** brands of bathroom tissue have resulted in

16  widespread customer recognition of the Georgia-Pacific trade dress as an identifier of Georgia-

17  Pacific and its high-quality products. *Id.* ¶ 18.

18      **C.**    **Georgia-Pacific's Extensive Advertisement and Promotion of the ANGEL
       SOFT® Product Line**

19

20       Georgia-Pacific has invested heavily in advertising and promoting its **ANGEL SOFT®**

21  brand and products for more than six decades. *Id.* ¶ 12.  In the U.S. in 2006 alone, Georgia-

22  Pacific spent over $22 million to advertise and to promote bathroom tissue sold under the

23  **ANGEL SOFT** Trademarks. *Id.*  Georgia-Pacific's advertisements and promotions for its

24  **ANGEL SOFT®** toilet paper prominently feature the Georgia-Pacific **ANGEL SOFT®** trade

25  dress, either through a photograph of the **ANGEL SOFT®** wrapper, or by featuring its color

26  scheme of bold turquoise and peach, with its distinctive trademarked "Angel Soft" script printed

27  in white text surrounded by turquoise and outlined in peach. *See id.* ¶ 17.

28

1    Georgia-Pacific has widely advertised and promoted the **ANGEL SOFT®** brand in

2  variety of ways.  In the U.S., this advertising has consisted of television commercials, print

3  publications, radio commercials, billboards, live promotions, sponsorship of large events, trade

4  shows, brochures, and internet promotions—just to name a few.  *Id.* ¶ 13; Exs. 11-22.  This

5  advertising and promotion has been continuous, and also has included numerous large-scale

6  campaigns that have stood out for consumers.  Some examples include the "Angels in Action"

7  and "Bathroom Moments" campaigns, which received significant media attention and coverage.

8  *Id.* ¶ 15.  Notably, Georgia-Pacific also directs a substantial portion of its advertising for the

9  **ANGEL SOFT** Trademarks toward the Spanish-speaking market.  Since 2005, Georgia-Pacific

10  has paid for numerous targeted television and radio advertisements in this market.  *Id.* ¶ 14.

11    Georgia-Pacific has promoted its **ANGEL SOFT®** brands in a variety of other ways as

12  well, including via the internet.  In 2003, Georgia-Pacific created a website

13  (www.angelsoft.com) specifically to promote its **ANGEL SOFT** Trademarks and products.  *Id.*

14  ¶ 16; Exs. 23-25.  This website currently receives an average of 4,145 visitors per month.  *Id.*

15  Georgia-Pacific also distributes point of sale materials that promote the **ANGEL SOFT**

16  Trademarks and products.  *Id.* ¶ 17; Exs. 26 & 27.

17    Through over sixty years of advertising and promotion of the **ANGEL SOFT®** brand,

18  and by virtue of millions of dollars in marketing and advertising expenditures, the **ANGEL**

19  **SOFT®** brand has become well-known among consumers.  The **ANGEL SOFT** Trademarks,

20  which serve to identify the **ANGEL SOFT®** brand, thus are extremely valuable to Georgia-

21  Pacific.

22    **D.    Defendants' Sale and Distribution of Confusingly Similar "Angel" Bathroom**
          **Tissue**
23

24    Georgia-Pacific recently became aware that Defendants are importing, marketing, and

25  distributing a variety of bathroom tissue products under the name "Angel," including "Angel

26  500," "Angel 525," "Angel 600," "Angel 650," and "Angel 1500."  *See id.* ¶ 20.  Samples of

27  "Angel" bathroom tissue products have been purchased from retail stores in the Los Angeles area

28

LATHAM&WATKINS LLP   NSD\90799.1
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY

6

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

1  and in San Diego.  Declaration of Darwin D. Wisdom ("Wisdom Decl.") ¶¶ 4, 5; Declaration of

2  Randal J. Pissot ("Pissot Decl.") ¶ 2.

3       As shown by the photographs below, the "Angel" products bear marks and images that

4  are confusingly similar to the **ANGEL SOFT** Trademarks:

 

11       Defendants' bathroom tissue wrappers all display the name "Angel" printed in text that is

12  strikingly similar to that employed by Georgia-Pacific on its **ANGEL SOFT®** bathroom tissue

13  product packaging.  Each variety of "Angel" bathroom tissue is sold in a wrapper having a pink

14  background, with a white oval in the foreground containing the stylized text "Angel" printed in a

15  font nearly identical to the unique font found on the wrapper of the corresponding **ANGEL**

16  **SOFT®** bathroom tissue packaging associated with Georgia-Pacific's **ANGEL SOFT**

17  Trademarks.  Given these substantial similarities in product labeling and package design, there

18  can be no doubt of Defendants' intent to confuse consumers and trade off Georgia-Pacific's

19  extensive goodwill in its **ANGEL SOFT** Trademarks and trade dress.

20       To date, Georgia-Pacific has identified several business entities and individuals that are

21  responsible for distribution, marketing, and sale of the "Angel" products within the Southern

22  California region:

23       <u>Yan Wholesale and Allen Yan Chow</u>

24       Yan Wholesale, through Allen Yan Chow, has been identified as a primary importer and

25  distributor of "Angel" bathroom tissue products.  Wisdom Decl. ¶¶ 4, 5.  Yan Wholesale is also

26  the purported owner of a California trademark registration, Number 109928, for a stylized design

27

28

LATHAM&WATKINS^LLP  NSD\90799.1
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY
7
MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

1  including the word "Angel." *Id.* ¶ 3.[1]  Allen Yan Chow is listed on the California trademark

2  registration form as the owner of Yan Wholesale, and Yan Wholesale's principal place of

3  business is a single family residence owned by Allen Yan Chow. *Id.*

4    According to sources whom actually purchase "Angel" bathroom tissue from Mr. Chow,

5  he imports "Angel" bathroom tissue from China into Long Beach harbor. *Id.* ¶ 11.  Mr. Chow

6  then personally delivers large quantities of the "Angel" product to various wholesalers in the

7  Southern California area. *Id.* ¶¶ 9-11.  These infringing and inferior-quality goods are being sold

8  in retail stores throughout Southern California, including stores in San Diego county. *Id.* ¶¶ 4-

9  11; Pissot Decl. ¶ 2.

10    <u>Rush Wholesale and Roman Rushinsky</u>

11    Rush Wholesale, owned and operated by Roman Rushinsky, also has been identified as

12  an importer and distributor of various "Angel" bathroom tissue products.  Wisdom Decl. ¶ 12;

13  Declaration of Adam Welland ¶ 3, Ex. 1.  Mr. Rushinsky operates a website

14  (http://www.rushinsky.com/angel500) which promotes and sells a variety of "Angel" products.

15  *See* Wisdom Decl. ¶ 12.  A picture of the "Angel" products as advertised by Mr. Rushinsky on

16  this website is shown below:



24  *Id.* ¶¶ 12, 13; Ex. 7.  This website names the distributor of the "Angel" bathroom tissue products

25  as Rush Wholesale, which is listed as "serving San Diego, National City, Chula Vista, El Cajon,

---

27  [1] This registration was improperly granted, as Georgia-Pacific has used in commerce and
obtained federally registered trademarks that are strikingly similar and well-known prior to the
28  purported use and registration of Yan Wholesale's "Angel" mark for the same type of goods.
*See* Cal. Bus. & Prof. Code §§ 14281 & 14282.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY

NSD\90799.1

8

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

1  and many other areas." *Id.* The website indicates that other "Angel" products, including Angel

2  600 and Angel 650 are "other products available and new products that're coming soon." *Id.*

3  This promotion and distribution of infringing "Angel" products is unauthorized.

4      Yes Wholesale

5      Georgia-Pacific also has reason to believe that an import and distribution business

6  entitled Yes Wholesale or Yes Wholesale of Mexico markets, sells, and/or distributes infringing

7  "Angel" products. Further investigation and discovery will be necessary to determine the extent

8  of Yes Wholesale's infringement upon Georgia-Pacific's **ANGEL SOFT** Trademarks.

9  **III.    STANDARD FOR RELIEF**

10     A temporary restraining order is a form of preliminary injunctive relief issued to preserve

11  the status quo and prevent irreparable harm until a full hearing can be held. *Granny Goose*

12  *Foods, Inc. v. B'hood of Teamsters*, 415 U.S. 423, 439 (1974). The same standards apply to the

13  issuance of a temporary restraining order as apply to the issuance of a preliminary injunction.

14  *See Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D.

15  Cal. 1995); *Woodrow F. Morgan, Inc. v. United States*, 670 F. Supp. 289, 290 (E.D. Cal. 1987).

16  If anything, the standards for issuance of a TRO are less rigid than those for issuance of a

17  preliminary injunction. *Los Angeles Unified Sch. Dist. v. U.S. Dist. Court*, 650 F.2d 1004, 1008

18  (9th Cir. 1981) (Ferguson, J., dissenting).

19     Courts in the Ninth Circuit are guided by the following standards for the issuance of

20  preliminary injunctive relief:

21         To obtain a preliminary injunction, the moving party must show either
           (1) a combination of probable success on the merits and the possibility of
22         irreparable injury, or (2) that serious questions are raised and the balance
           of hardships tips sharply in its favor. These formulations are not different
23         tests but represent two points on a sliding scale in which the degree of
           irreparable harm increases as the probability of success on the merits
24         decreases.

25  *Big Country Foods, Inc. v. Board of Educ.*, 868 F.2d 1085, 1088 (9th Cir. 1989) (internal

26  citations omitted); *see also GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204-05 (9th Cir.

27  2000) (same); *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1119 (9th Cir. 1999)

28  (same). Thus, even if the court is uncertain of the moving party's likelihood of success on the

LATHAM&WATKINS^LLP   NSD\90799.1
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY                                    9

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

1  merits, a TRO still may issue if the moving party convinces the court that the balance of

2  hardships tips in its favor. *See Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d

3  914, 917 (9th Cir. 2003); *see also Nat'l Center for Immigrants Rights, Inc. v. INS*, 743 F.2d

4  1365, 1369 (9th Cir. 1984) ("The greater the relative hardship to the moving party, the less

5  probability of success on the merits must be shown.").

6       Where a plaintiff demonstrates a likelihood of success on the merits of a trademark

7  infringement claim, irreparable harm is presumed. *GoTo.com*, 202 F.3d at 1205 n.4. "This

8  presumption effectively conflates the dual inquiries of this prong into the single question of

9  whether the plaintiff has shown a likelihood of success on the merits." *Id.*; *see also Duncan*

10  *McIntosh Co., Inc. v. Newport Dunes Marina LLC*, 324 F. Supp. 2d 1078, 1082-83 (C.D. Cal.

11  2004). Thus, a temporary restraining order should issue if the plaintiff can show "a fair chance

12  of success on the merits or questions . . . serious enough to require litigation." *Sports Form, Inc.*

13  *v. United Press Intl., Inc.*, 686 F.2d 750, 753 (9th Cir. 1982).[2] As detailed below, the standard for

14  preliminary injunctive relief is met under the facts of this case.

15  **IV.**    **ARGUMENT**

16      **A.**    **Georgia-Pacific Is Likely to Succeed on the Merits of Its Trademark**
             **Infringement Claim**[3]

17

18       To prove its claim of trademark infringement under Section 32 of the Lanham Act, 11

19  U.S.C. § 1114,[4] Georgia-Pacific must establish that (1) it owns the trademarks at issue; (2) the

20  defendant has used in commerce, without authorization, a copy, reproduction, counterfeit or

21  _____

22  [2]    Courts in this judicial district and elsewhere have not hesitated to grant preliminary relief
   to prevent the infringement of valuable trademark rights. *See, e.g., Pacific Law Center v.*

23  *Saadat-Nejad*, 2007 WL 2005257 (S.D. Cal. Apr. 27, 2007) (unpublished preliminary injunction
   order); *Honor Plastic Indus. Co. LTD. v. Lollicup USA, Inc.*, 466 F. Supp. 2d 1217 (E.D. Cal.

24  2006); *CSC Brands LP v. Herdez Corp.*, 191 F. Supp. 2d 1145 (E.D. Cal. 2001); *Electropix v.*
   *Liberty Livewire Corp.*, 178 F. Supp. 2d 1125 (C.D. Cal. 2001).

25  [3]    For reasons similar to those explained *infra*, Georgia-Pacific is likely to succeed on the
   merits of its claim for common law trademark infringement.

26  [4]    15 U.S.C. § 1114(1) imposes liability for trademark infringement upon "[a]ny person
   who shall, without the consent of the registrant (a) use in commerce any reproduction,

27  counterfeit copy, or colorable imitation of a registered mark in connection with the sale, offering
   for sale, distribution, or advertising of any good or services on or in connection with such use is

28  likely to cause confusion, or to cause mistake, or to deceive."

LATHAM&WATKINS<sup>LLP</sup>  NSD\90799.1
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY

10

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

1   colorable imitation of the mark in connection with the sale, distribution, or advertising of goods

2   and services; and (3) the defendant's use of the mark is likely to cause confusion or to cause

3   mistake or to deceive. *E.g.*, *Brookfield Commc'n, Inc. v. W. Coast Entm't Co.*, 174 F.3d 1036,

4   1060 (9th Cir. 1999). As detailed below, Georgia-Pacific can establish each of these elements

5   and therefore is likely to succeed on the merits of its trademark infringement claim.

6            **1.      Georgia-Pacific Owns the ANGEL SOFT Trademarks at Issue**

7         First, Georgia-Pacific owns each of the **ANGEL SOFT** Trademarks infringed by the

8   "Angel" products. Georgia-Pacific and its predecessors in interest have applied for and obtained

9   federal trademark registrations for several trademarks bearing the words "Angel Soft." Towle

10  Decl. ¶ 7. These trademarks include Registration Numbers 781,414; 1,172,215; 2,512,417;

11  2,912,982; 2,972,819; and 2,989,711. *Id.*; *see also supra* at 4.

12        Georgia-Pacific is the current owner of each **ANGEL SOFT** Trademark by virtue of a

13  valid assignment. Specifically, Registration Number 781,414 was originally applied for by

14  Angel Soft Tissue Mills, Inc., which then assigned its rights to Hudson Pulp & Paper Corp.,

15  which then assigned its rights to Georgia-Pacific Corp., which then assigned its rights to

16  Georgia-Pacific Consumer Products LLC, which finally assigned its rights in 2006 to Georgia-

17  Pacific Consumer Products LP. Towle Decl., Ex. 3. Similarly, Registration Number 1,172,215

18  originally was applied for and obtained by Hudson Pulp & Paper Corp., which assigned its rights

19  to Georgia-Pacific Corp., which then assigned its rights to Georgia-Pacific Consumer Products

20  LLC, which finally assigned its rights in 2006 to Georgia-Pacific Consumer Products LP. *Id.*,

21  Ex. 4. Finally, Registration Numbers 2,512,417; 2,912,982; and 2,989,711 originally were

22  applied for and obtained by Georgia-Pacific Corp., which then assigned its rights to Georgia-

23  Pacific Consumer Products LLC, which finally assigned its rights in 2006 to Georgia-Pacific

24  Consumer Products LP. *Id.*, Exs. 5, 6, 8.

25            **2.      Defendants' Use of Confusingly Similar Marks Is Unauthorized**

26        Second, Defendants' distribution and/or sale of "Angel" bathroom tissue products is an

27  unauthorized commercial use of Georgia-Pacific's registered **ANGEL SOFT** Trademarks.

28

LATHAM&WATKINS™  NSD\90799.1
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY                                                          11

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

3. **There Is a Likelihood of Confusion Between Georgia-Pacific's ANGEL SOFT® Bathroom Tissue and Defendants' "Angel" Bathroom Tissue**

Finally, Defendants' use of substantially similar marks and images in connection with their "Angel" bathroom tissue products creates a strong likelihood of consumer confusion.

In evaluating whether a likelihood of confusion exists, courts within the Ninth Circuit generally consider eight factors: (1) the strength of the trade dress; (2) the proximity or relatedness of the goods; (3) the similarity of the trade dresses; (4) evidence of actual confusion; (5) the marketing channels used; (6) types of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the trade dress; and (8) the likelihood of expansion of product lines. *GoTo.com*, 202 F.3d at 1205; *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979) ("*Sleekcraft*"). "The court need not address all of the factors, nor must the claimant establish that each weighs in [its] favor in order to establish a likelihood of confusion." *Glow Indus. v. Lopez*, 273 F. Supp. 2d 1095, 1116-17 (C.D. Cal. 2003). Rather, "[s]ome factors are much more important than others, and the relative importance of each individual factor will be case-specific. Although some factors—such as the similarity of the mark and whether the two companies are direct competitors—will always be important, it is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors." *Brookfield*, 174 F.3d at 1054.

Applying the "*Sleekcraft*" factors here shows that virtually all of the factors point to a high likelihood of confusion between the Defendants' "Angel" marks and images and Georgia-Pacific's **ANGEL SOFT** Trademarks.

a. **The Strength of Georgia-Pacific's ANGEL SOFT Trademarks**

Strong marks generally are afforded greater protection than weak ones. *Ocean Garden, Inc. v. Marktrade Co.*, 953 F.2d 500, 506 (9th Cir. 1991) ("[a] strong mark is inherently distinctive" and "will be afforded the widest ambit of protection from infringing uses"). The **ANGEL SOFT** Trademarks are inherently distinctive, and thus constitute strong trademarks. On the spectrum of distinctiveness, the **ANGEL SOFT** Trademarks are arbitrary—not descriptive or suggestive of the type of product—and arbitrary marks typically are strong marks.

LATHAM&WATKINS™ NSD\90799.1
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY

12

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

1   *Brookfield*, 174 F.3d at 1058; *Nutri/System, Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 605 (9th

2   Cir. 1987).

3           At a minimum, the **ANGEL SOFT** Trademarks are suggestive. *Brookfield*, 174 F.3d at

4   1058, n. 19 ("A suggestive mark conveys an impression of a good but requires the exercise of

5   some imagination and perception to reach a conclusion as to the product's nature"). As the court

6   explained in *Brookfield*, "advertising expenditures can transform a suggestive mark into a strong

7   mark . . . where, for example, that mark has achieved actual marketplace recognition." *Id.* at

8   1058 (citing *Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739, 743-44 (2d Cir. 1998)). As

9   discussed above, Georgia-Pacific's **ANGEL SOFT** Trademarks have been in use since 1944.

10  Consumers have associated these trademarks with Georgia-Pacific's bathroom tissue for over

11  sixty years. Millions of dollars spent on advertising and promotion of this brand has served to

12  solidify this correlation in the marketplace.

13          Whether the **ANGEL SOFT** Trademarks are classified as arbitrary or as suggestive

14  marks, the **ANGEL SOFT** Trademarks are strong marks entitled to a high degree of protection.

15  Thus, the first factor, the strength of the **ANGEL SOFT®** Trademarks, strongly supports a

16  finding of a likelihood of confusion.

17                          **b.      Proximity or Relatedness of the Goods**

18          When goods are related, "the danger presented is that the public will mistakenly assume

19  there is an association between the producers of the related goods, though no such association

20  exists." *Sleekcraft*, 599 F.2d at 350. Here, putting issues of quality aside, Georgia-Pacific's

21  **ANGEL SOFT®** products and Defendants' virtually identical "Angel" products unquestionably

22  are related in that both are bathroom tissue products. When virtually identical marks are used in

23  connection with related products, likelihood of confusion follows as a "matter of course."

24  *Brookfield*, 174 F.3d at 1056; *Lindy Pen Co v. Bic Pen Corp.*, 796 F.2d 254, 256-57 (9th Cir.

25  1986). Furthermore, these bathroom tissue products are sold in many of the same types of stores.

26  Wisdom Decl. ¶¶ 4, 5; Pissot Decl. ¶ 2, thereby increasing the likelihood that consumers will

27  confuse the infringing product for the genuine product. *Cf. Sleekcraft*, 599 F.2d at 350 (less

28  similarity between marks required when goods are sold to the same class of purchasers).

1  Accordingly, the second *Sleekcraft* factor, the proximity and relatedness of the goods, also

2  supports the existence of a likelihood of confusion.

3          c.      **Similarity of the ANGEL SOFT Trademarks and the "Angel"**
                   **Marks and Images**

4

5          The **ANGEL SOFT** Trademarks and the marks and images found on the "Angel"

6  bathroom tissue products are strikingly similar.  A side-by-side comparison of the two products

7  illustrated above, *supra* at 2, confirms the similarities, especially in light of the fact that "Angel"

8  products may be found in the very types of retail stores where consumers would expect to find

9  **ANGEL SOFT®** products.

10         While the "Angel" products do not also copy the word "Soft," it is the use of the word

11 "Angel" in the product labeling that is sure to cause consumer confusion.  In fact, several of the

12 **ANGEL SOFT** Trademarks (specifically, Registration Numbers 781,414; 1,172,215; 2,512,417;

13 2,972,819) were issued only if the word "Soft" was disclaimed from protection.  Towle Decl.,

14 Exs. 3-5, 7.  It is thus the use of the word "Angel" that is so valuable in identifying Georgia-

15 Pacific's goods.

16         In addition, as shown in the photograph below, the "Angel" product employs a font that

17 is almost identical to that protected by **ANGEL SOFT** Trademark Registration Number

18 2,512,417:

19

20

21                                            

22

23

24

25 Indeed, the *only noticeable difference* between the "Angel" and **ANGEL SOFT** Trademarked

26 lettering is in the differing shape of the letter A.

27         The overall striking similarity between the Georgia-Pacific' **ANGEL SOFT** Trademarks

28 and the marks and images used in conjunction with Defendants' "Angel" product line therefore

1  strongly support a likelihood of confusion. *See Lois Sportswear U.S.A., Inc. v. Levi Strauss Co.*,

2  799 F.2d 867, 873 (2d Cir. 1986).

3                    **d.    Actual Confusion**

4       Georgia-Pacific has not yet developed substantial evidence of actual confusion.  To date,

5  Georgia-Pacific's principal evidence of actual consumer confusion is an anonymous letter

6  notifying Georgia-Pacific of the sale of infringing "Angel" bathroom tissue products.  Towle

7  Decl. ¶ 20.  Georgia-Pacific expects to develop additional evidence of substantial confusion

8  during the course of discovery and further investigation in connection with this action.  Courts

9  have consistently recognized that evidence of actual confusion is often difficult to obtain, and

10  thus undue weight should not be accorded to this factor.  *Brookfield*, 174 F.3d 1050; *see also E*

11  *& J Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1292 (9th Cir. 1992) ("Evidence of actual

12  confusion is relevant to the issue of likelihood of confusion, but the absence of such evidence

13  need not create an inference that there is no likelihood of confusion.").

14                    **e.    Marketplace Factors**

15       Where, as here, convergent marketing channels are employed, the likelihood of confusion

16  is increased.  *Sleekcraft*, 599 F.2d at 353.  Georgia-Pacific's **ANGEL SOFT®** and Defendants'

17  "Angel" bathroom tissue products are sold at many of the same types of retail establishments.

18  *Compare* Towle Decl. ¶ 11 *with* Wisdom Decl. ¶¶ 4, 5, and Pissot Decl. ¶ 2.  When sold in the

19  same location, the products would ordinarily be sold on the same shelf, where space is limited

20  and packed tightly together.  *Id.*  Thus, Defendants' products will likely be sold in close

21  proximity to Georgia-Pacific's **ANGEL SOFT®** bathroom tissue in such locations.  This further

22  increases the likelihood that consumers will purchase one brand of bathroom tissue believing it

23  to be the other.  Because the two products will be sold through the same types of retail channels

24  and next to or close to each other on retail shelves, this factor also supports a finding of likely

25  confusion.

26                    **f.    The Types of Goods and Purchaser Care**

27       Likelihood of confusion is determined by reference to the hypothetical "reasonably

28  prudent consumer."  *Brookfield*, 174 F.3d at 1060.  Such a consumer is expected "to be more

LATHAM&WATKINS℠  NSD\90799.1
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY

15

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

1    discerning—and less easily confused—when purchasing expensive items." *Id.* By contrast,

2    purchasers of relatively inexpensive goods do not exercise a high level of purchasing care,

3    making confusion between such goods more likely. *Id.*; *E. & J. Gallo Winery*, 967 F.2d at 1293;

4    *Beer Nuts v. Clover Club Foods Co.*, 805 F.2d 920, 928 (10th Cir. 1986).

5         Bathroom tissue products, such as Georgia-Pacific's **ANGEL SOFT®** bathroom tissue,

6    are relatively inexpensive products that often are purchased individually or in packages of four to

7    twenty-four rolls, and typically retailing at low prices. Due to the similarity of Defendants'

8    products to **ANGEL SOFT®** bathroom tissue and given these products' relatively low prices,

9    purchasers are likely to quickly pick one product from crowded store shelves with little thought.

10   Moreover, the sale of "Angel" products in geographic areas with a high proportion of Spanish-

11   speaking customers enhances the degree to which these consumers are likely to be confused.

12   Indeed, these consumers may rely exclusively upon the distinctive **ANGEL SOFT** Trademark

13   and graphics to identify the bathroom tissue product they prefer. The prevalence of Spanish-

14   speaking consumers further increases the likelihood that consumers will purchase the "Angel"

15   bathroom tissue, mistakenly believing it to be **ANGEL SOFT®** or associated with Georgia-

16   Pacific. Accordingly, this factor also supports a finding of likely confusion.

17           g.    **Defendants' Intent In Choosing the Marks and Images for the**

18                 **"Angel" Bathroom Tissue**

19        Defendants are keenly aware of the tremendous commercial success of Georgia-Pacific's

20   **ANGEL SOFT®** and **ANGEL SOFT PS®** bathroom tissue. Defendants intentionally adopted

21   marks and images for their product similar to Georgia-Pacific's in an effort to trade upon the

22   goodwill and success of the **ANGEL SOFT®** brand.

23        Defendants' choice of a name virtually identical to **ANGEL SOFT®**, not to mention

24   Defendants' use of an almost *identical* font to that of Registration Number 2,512,417,

25   demonstrates Defendants' deliberate intent to trade off Georgia-Pacific's valuable goodwill in its

26   **ANGEL SOFT®** brand. It is highly unlikely that Defendants could unintentionally have chosen

27   such a strikingly similar name and design. This factor therefore also supports a finding of a

28   likelihood of confusion. *See Brookfield*, 174 F.3d at 1059 (noting that "if an infringer 'adopts his

1  designation with the intent of deriving benefit from the reputation of the trademark or trade

2  name, its intent may be sufficient to justify the inference that there are confusing similarities.'")

3  (quoting *Pac. Telesis v. Int'l Telesis Comm'cns*, 994 F.2d 1364, 1369 (9th Cir. 1993)).

### h.    Likelihood of Expansion of Products

5      The final *Sleekcraft* factor is the likelihood that the parties will expand their product lines

6  into direct competition. *Sleekcraft*, 599 F.2d at 354. Here, that expansion already has occurred:

7  Georgia-Pacific and Defendants presently are selling confusingly-similar, directly-competing

8  bathroom tissue products. Accordingly, this factor also supports a finding of a likelihood of

9  confusion.

10              *              *              *

11      In sum, an analysis of each of the *Sleekcraft* factors supports a finding of likelihood of

12  confusion between Georgia-Pacific's **ANGEL SOFT** Trademarked products and Defendants'

13  competing "Angel" products. Defendants adopted duplicate marks, applied them to identical

14  goods, and intended to trade off of Georgia-Pacific's goodwill among consumers of bathroom

15  tissue products. Georgia-Pacific accordingly is likely to succeed on the merits of its Lanham Act

16  and common law trademark infringement claims.

### B.    Georgia-Pacific Also Is Likely to Prevail Upon Its Other Claims

18      While Georgia-Pacific's high likelihood of success with regard to its trademark

19  infringement claims is alone adequate to support the entry of preliminary injunctive relief,

20  because Georgia-Pacific also is likely to prevail upon its other causes of action, additional

21  grounds for relief exist.

### 1.    Georgia-Pacific Is Likely to Prevail in Its Trade Dress Claim

23      Trade dress refers to "the total image, design, and appearance of a product and ' may

24  include features such as size, shape, color combinations, texture or graphics.' " *Clicks Billiards,*

25  *Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). To sustain a claim for trade dress

26  infringement, Georgia-Pacific must show: (1) that its **ANGEL SOFT®** trade dress is non-

27  functional; (2) that the **ANGEL SOFT®** trade dress serves a source-identifying role because it

28  has acquired a secondary meaning, i.e., that its trade dress is distinctive; and (3) that Defendants'

LATHAM&WATKINS
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY    NSD\90799.1

17

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

1    product creates a likelihood of consumer confusion. *Id.* at 1258. Here, each of these criteria are

2    satisfied.

3        First, none of the elements of the **ANGEL SOFT®** trade dress—its name, graphics, color

4    scheme and overall packaging design—are functional. *See Qualitex Co. v. Jacobsen Prods. Co.,*

5    514 U.S. 159, 165 (1995) (a product feature is functional only if it "is essential to the use or

6    purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use of

7    the feature would put competitors at a significant, non-reputation related disadvantage"). Indeed,

8    the name "Angel Soft" and the overall visual impression of the combination and arrangement of

9    **ANGEL SOFT®** packaging, graphics, and other design elements is aesthetic, not functional.

10   There are a number of other names, graphics and package designs that Defendants could use to

11   promote their bathroom tissue without causing confusion with the **ANGEL SOFT®** trade dress.

12       Second, Georgia-Pacific's **ANGEL SOFT®** trade dress serves an identifying role

13   because of its inherent distinctiveness. The **ANGEL SOFT®** trade dress includes its arbitrary

14   name, graphics, and packaging design which collectively intrinsically identify the source of the

15   product. *See Two Pesos, Inc. v. Taco Cabana,* Inc., 505 U.S. 763, 769 (1992).[5]

16       Finally, the evidence of likelihood of confusion in this case is compelling, as discussed in

17   detail above. Accordingly, Georgia-Pacific has demonstrated a strong likelihood of success with

18   regard to its trade dress infringement claim.

19

20

---

21   [5]    Alternatively, the **ANGEL SOFT®** trade dress has acquired secondary meaning—"the
     mental association by a substantial segment of consumers and potential consumers 'between the
22   alleged mark and a single source of the product.'" *Sharper Image Corp. v. Target Corp.,* 425 F.
     Supp. 2d 1056, 1072-73 (N.D. Cal. 2006) (quoting *Levi Strauss & Co. v. Bluebell, Inc.,* 778 F.2d
23   1352-54 (9th Cir. 1985)). Extensive use and advertising with regard to a particular trade dress
     over a substantial period of time is enough to establish secondary meaning. *Clamp Mfg. Co. v.*
24   *Enco Mfg. Co.,* 870 F.2d 512 (9th Cir. 1989).

         As described at length above, Georgia-Pacific has been selling its **ANGEL SOFT®**
25   bathroom tissue products with their inherently distinctive trade dress since 1944. *Supra* at 3-4.
     Additionally, Georgia-Pacific has spent tens of millions of dollars to advertise and to promote its
26   **ANGEL SOFT®** and **ANGEL SOFT PS®** products. *Id.* As a result of these marketing efforts
     and the established **ANGEL SOFT®** brand, consumers associate the **ANGEL SOFT®** trade
27   dress with Georgia-Pacific and its high-quality **ANGEL SOFT®** bathroom tissue products. *See*
     Towle Decl. ¶ 18. Collectively, these factors demonstrate that the **ANGEL SOFT®** trade dress
28   has achieved secondary meaning in the marketplace.

LATHAM&WATKINS™ NSD\90799.1
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY

18

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

2.      **Georgia-Pacific Is Likely to Prevail in Its False Designation of Origin Claim**

Under federal law, a cause of action will lie for "any false designation of origin, false or misleading description of fact, or false or misleading representation of fact." Lanham Act § 43(a) (15 U.S.C. § 1125(a)). The passing off of a defendant's products as genuine products of another has long been recognized as false designation of origin under Sections 32(1) and 43(a) of the Lanham Act. *See, e.g., Thelen Oil Co., Inc. v. Fina Oil & Chem. Co.*, 962 F.2d 821, 822 (8th Cir. 1992); *Edward J. Sweeney & Sons, Inc. v. Texaco Inc.*, 637 F.2d 105, 123 (3d Cir. 1989); *Allegheny Car Wash Corp. v. Amoco Oil Co.*, 201 U.S.P.Q. 798, 800 (W.D. Pa. 1977).

To establish a violation of the Lanham Act's prohibition against false designation of origin, Georgia-Pacific must establish the same elements as are required to prove a trademark or trade dress infringement claim. *See, e.g., Kwik-Site Corp. v. Clear View Mfg. Co.*, 758 F.2d 167, 178 (6th Cir. 1985); *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444-45 (Fed. Cir. 1985). As the Ninth Circuit explained in *Qualitex Co. v. Jacobsen Products Co.*, the likelihood of confusion among consumers and the public is the central element of each of these claims: "[T]he ultimate test [under the Lanham Act] is whether the public is likely to be deceived or confused by the similarity of the marks. Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical—is there a 'likelihood of confusion?'" 13 F.3d 1287, 1303 (9th Cir. 1994) (quoting *New West Corp. v. NYM Co.*, 595 F.2d 1194, 1201 (9th Cir. 1979)).

Having established a high likelihood of confusion among consumers of bathroom tissue products between the origins of "Angel" products and Georgia-Pacific's **ANGEL SOFT®** and **ANGEL SOFT PS®** brands of bathroom tissue, Georgia-Pacific also is likely to prevail upon its false designation of origin claim.

3.      **Georgia-Pacific Is Likely to Prevail in Its Unfair Competition Claim**

State common law claims of unfair competition and actions brought pursuant to California Business and Professions Code Section 17200 are "substantially congruent" to claims made under the Lanham Act. *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994);

LATHAM&WATKINS⊔⊔  NSD\90799.1
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY                                      19

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

1    *Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446,

2    1457 (9th Cir. 1991); *see also Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th

3    Cir. 1988) (the "ultimate test" with respect to both a claim brought under the Lanham Act and

4    one brought pursuant to California Business and Professions Code § 17200 is "whether the

5    public is likely to be deceived or confused by the similarity of the marks"); *Meta-Film Assocs.,*

6    *Inc. v. MCA, Inc.*, 586 F. Supp. 1346, 1362 (C.D. Cal. 1984) (unfair misappropriation under the

7    Lanham Act parallel to wrongful unfair competition under § 17200). Because these claims are

8    substantially congruent, Georgia-Pacific is likely to succeed with regard to its § 17200 claim of

9    unfair competition, just as it is likely to succeed with its trademark and trade dress infringement

10   claims, discussed above.

11       C.    **Georgia-Pacific Has Established Irreparable Injury as a Result of
                Defendants' Conduct**

12

13       Because Georgia-Pacific has demonstrated a likelihood of confusion, irreparable injury is

14   presumed. *GoTo.com*, 202 F.3d at 1205 n.4; *see also Metro Publishing, Ltd. v. San Jose*

15   *Mercury News*, 987 F.2d 637, 640 (9th Cir. 1993) ("Once the plaintiff has demonstrated a

16   likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if

17   injunctive relief is not granted."). Furthermore, Defendants' infringement of the **ANGEL SOFT**

18   Trademarks creates more than just a presumption of irreparable harm to Georgia-Pacific.

19   Georgia-Pacific has spent decades and, in just the past year alone, over $22 million dollars

20   advertising and promoting the **ANGEL SOFT®** product line. Towle Decl. ¶ 12. As a result, the

21   **ANGEL SOFT** Trademarks have become extremely valuable assets to Georgia-Pacific as

22   identifiers of its goods and of the substantial goodwill Georgia-Pacific has earned over its years

23   in the market. *Id.* Consumers inadvertently purchasing the "Angel" product thinking it was

24   **ANGEL SOFT®** bathroom tissue will be extremely disappointed by the inferior quality. Such a

25   misperception among consumers would irreparably tarnish and damage the substantial goodwill

26   that Georgia-Pacific has built in the **ANGEL SOFT®** product line. Preliminary injunctive relief

27   is therefore critical to preventing Defendants' trademark infringement from irreparably injuring

28

LATHAM&WATKINS™    NSD\90799.1
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY

20

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

1    Georgia-Pacific. *See Rent-A-Center, Inc. v. Canyon Television & Appliance*, 944 F.2d 597, 603

2    (9th Cir. 1991).

3    **D.    The Balance of Hardships Favors Granting Preliminary Injunctive Relief**

4    Because Georgia-Pacific has established both a likelihood of success on the merits and

5    irreparable harm, the Court may grant preliminary injunctive relief on that basis alone.

6    *GoTo.com*, 202 F.3d at 1204-05. Nevertheless, consideration of the balance of the hardships also

7    weighs in favor of preliminary injunctive relief.

8    Georgia-Pacific has spent many years and millions of dollars developing and promoting

9    its **ANGEL SOFT®** and **ANGEL SOFT PS®** products, which are well-recognized and very

10    successful. Despite this success, as a result of Defendants' conduct, Georgia-Pacific stands to

11    lose much of the goodwill it has worked so hard to gain. Consumers who purchase "Angel"

12    products thinking that they are Georgia-Pacific products inevitably will be disappointed and

13    consequently may never again hold Georgia-Pacific in the same regard.

14    Defendants, by contrast, have made no investment in the **ANGEL SOFT®** and **ANGEL**

15    **SOFT PS®** name, high-quality, or packaging design. Nothing prevents Defendants from

16    distributing, marketing, and selling bathroom tissue products under another name and with

17    another design. Thus, if Defendants are prohibited from distributing and selling their infringing

18    products in packaging that is substantially similar to Georgia-Pacific's trademarks and trade

19    dress, Defendants will remain free to distribute, market, and sell their bathroom tissue products

20    under another name and with a different, unique design.

21    Preliminary injunctive relief will prevent Defendants only from continuing to mislead the

22    public by distributing and selling the misleading "Angel" product. This minimal "hardship" to

23    Defendants is far outweighed by the undisputed and continuing injury to Georgia-Pacific's

24    business reputation and goodwill. Accordingly, the balance of hardships tips decidedly in favor

25    of the issuance of a temporary restraining order and preliminary injunction prohibiting the sale

26    and distribution of "Angel" products.

27

28

1   **E.    Preliminary Injunctive Relief Would Serve the Public Interest**

2   Finally, preliminary injunctive relief in favor of Georgia-Pacific would serve the public

3   interest. "It is well established that trademark law protects not only the private interests of the

4   trademark owner but also the public's interest in not being confused by the infringing

5   products. . . . Thus, the purchasing public is an unnamed party in every action for trademark

6   infringement." *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1075 (C.D. Cal.

7   2004). Here, the grant of preliminary injunctive relief is necessary to protect consumers from the

8   harm that would arise from confusion between Georgia-Pacific's **ANGEL SOFT®** bathroom

9   tissue and Defendants' inferior "Angel" product. Accordingly, this factor also supports the grant

10  of preliminary injunctive relief.

11  **V.    CONCLUSION**

12  For the foregoing reasons, Georgia-Pacific respectfully requests that the Court grant a

13  temporary restraining order and a preliminary injunction enjoining Defendants from promoting

14  and marketing their "Angel" bathroom tissue products.

15  Dated:  December 20, 2007                    Respectfully submitted,

16                                               LATHAM & WATKINS LLP

17

18                                               By: _____
                                                 Stephen P. Swinton

19                                               Attorneys for Plaintiff
                                                 Georgia-Pacific Consumer Products LP

20                                               E-mail: steve.swinton@lw.com