1 | WENDY L. SLAVKIN, ESQ.
wlslavkin@aol.com
2 | 11707 Sunset Boulevard, Suite 24
Los Angeles, California 90049
3 | State Bar No. 89100

4 | (310) 476-1959 voice
(310) 476-1939 fax
5 |

6 | Attorney for Defendants
7 | YAN WHOLESALE and ALLEN YAN CHOW

8 | IN THE UNITED STATES DISTRICT COURT

9 | FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10 |

11 | GEORGIA-PACIFIC, CONSUMER PRODUCTS LP,

12 |                                        Civil Action No. 07-CV-02390 JAH POR

13 |                    Plaintiff,          **OPPOSITION OF DEFENDANTS YAN**
14 |        vs.                             **WHOLESALE AND ALLEN YAN CHOW**
                                           **TO MOTION FOR PRELIMINARY**
15 | YAN WHOLESALE; RUSH WHOLESALE;         **INJUNCTION; DECLARATIONS OF**
YES WHOLESALE; YES WHOLESALE OF            **WENDY L. SLAVKIN AND ALLEN YAN**
16 | MEXICO; ALLEN YAN CHOW, an             **CHOW IN SUPPORT THEREOF**
individual; ROMAN RUSHINSKY, an
17 | individual; GLEB TABACHNIK, an         **HEARING DATE:**
individual; JOHN YEH, an individual       Date:     **January 14, 2008**
18 |                    Defendants          Time:     **3:00 pm**
                                           Place:    **Courtroom 11**
19 |

20 |

21 |        Defendants' YAN WHOLESALE and ALLEN YAN CHOW submit the following

22 | opposition to Plaintiff's request for issuance of a preliminary injunction:

23 |                                        I.

24 |                          **INTRODUCTION/BACKGROUND**

25 |        Allen Chow ("Chow") is an individual doing business as Yan Wholesale ("Yan"),

26 | hereinafter sometimes collectively referred to as the " Chow Defendants". Since 1998-1999,

27 | Chow has been manufacturing bathroom tissue in China for export to the United States,

28 |

1

1  primarily for sale and distribution in California.  The name Chow has consistently used on
2  the tissue paper since 1998-1999 is "Angel", in the type and style as reproduced in Plaintiff's
3  moving papers (See Plaintiff's Memorandum of Points and Authorities in Support of Ex
4  Parte Application for Temporary Retraining Order, "MPA", page 2, lines 14 – 19 and page 7,
5  lines 5 – 10).

6      Prior to March 23, 2004, Chow, on behalf of Yan, filed an application for registration
7  of the trademark "Angel", with the following description:  baby angel with short curly hair,
8  winking its left one eye, wings stretched, holding pink heart with both hands, with head
9  band featuring top part of the body and head and wings.  The Secretary of State accepted
10  Chow's application and on March 23, 2004, issued a Certificate of Registration of
11  Trademark, bearing trademark No. 109928.  Attached as Exhibit "A" to the Attached
12  Declaration of Allen Yan Chow ("DAYC") is a true and correct copy of the Certificate of
13  Registration of Trademark, with accompanying copy of the graphic depiction of the mark,
14  issued by the State of California on March 23, 2004 (hereinafter, "Angel mark").

15      Prior to service of the herein lawsuit, and based on his registered trademark, Chow
16  believed he had every right to use the "Angel mark" on the bathroom tissue paper he was
17  manufacturing and importing from China.  At no time prior to service of the instant action
18  did Plaintiff ever contact Chow and advise him that he was in violation of its U.S.
19  Trademark, or otherwise.  It was only upon service of this action that Chow was first put on
20  notice of Plaintiff's claims against him and his business.  (DAYC p. 8, lines 22 - 28)

21                                        **II.**

22              **HISTORY OF DEVELOPMENT OF "ANGEL MARK" BY DEFENDANT**

23      In or about 1997, Chow began both importing from China, and purchasing locally,
24  ceramic figurines in the shape of an Angel.  He imported and purchased these figurines for
25  re-sale to discount retailers.  The angel figurines were so popular with the consumer public
26  that when Chow began manufacturing and importing bathroom tissue, he decided on the
27  angel logo as his trademark.  (DAYC, p. 9, lines 1 - 11)   Contrary to what Plaintiff would
28  have this court believe, Chow had no idea of the existence of Plaintiff's trademarks and did

2

1   not "intentionally adopt[] marks and images for their product similar to Georgia-Pacific's in

2   an effort to trade upon the goodwill and success of the Angel Soft® brand" (MPA p. 16,

3   lines 120 - 122). Nothing could be further from the truth. Plaintiff makes this absurd

4   statement with no basis in fact or knowledge of Chow's intent.

### III.

### STATUS OF MANUFACTURING AND SALE OF DEFENDANTS' PRODUCT

7   Upon receiving Plaintiff's lawsuit, Chow immediately notified his Chinese

8   manufacturers and agents to cease manufacturing Angel tissue paper until further notice. A

9   true and correct copy of Chow's fax to his Chinese manufacturers is attached as Exhibit "B"

10  to the DAYC. Furthermore, there remained only two more containers of Angel tissue paper

11  from China, which have now been re-directed to places outside the United States.

12  Therefore, Chow has ceased manufacturing, importing and/or selling tissue paper bearing

13  the "Angel mark" in the United States (DAYC p. 9, lines 12 - `15). Chow, through his

14  counsel Wendy L. Slavkin, notified Plaintiff's of this fact (See attached Declaration of

15  Wendy L. Slavkin, "DWLS", p.13, lines 9 – 15).

### IV.

### PLAINTIFF HAS FAILED TO ESTABLISH ITS CLAIM FOR

### TRADEMARK VIOLATION

19  Plaintiff has failed to establish the three (3) factors necessary to prove a claim of

20  trademark infringement under Section 32 of the Latham Act, 11 U.S.C. §1114, to wit:

21  A.    Ownership of Trademarks at Issue.

22  Although Plaintiff does appear to own the trademarks at issue, Chow also owns the

23  trademark that he registered in California, without objection, and has been using

24  continuously for over the past nine years or so ((DAYC, p. 8, lines 13 - 21). Furthermore, as

25  it is only registered in California, Chow has not sold his product to any other State in the

26  United States, only in California. According to his registered trademark, he has the

27  presumed legal right to do this.

28  //

3

1    B.    Unauthorized Use in Commerce of the Trademark.

2    In light of the fact that Chow does have a registered trademark in the State of

3    California, Chow's use of that trademark in California cannot be presumed to be

4    unauthorized. Quite the opposite; the Secretary of State for California legally granted Chow

5    a trademark for the "Angel mark".

6    C.    Likelihood of Confusion by Chow's Use of the "Angel mark".

7    The seven factors the Court must use in evaluating whether a likelihood of confusion

8    exists, are addressed as follows:

9    1.    The Strength of the Trade Dress.

10    Plaintiff would have this court believe that the marks used by Plaintiff is a "strong

11    mark" and therefore entitled to the highest degree of protection.    Defendants Yan

12    respectfully disagree. In this day and age it is common to see manufacturers using angels as

13    part of their product packaging design. In fact, Plaintiff does not even use an angel in its

14    mark, it uses a baby in a blanket, sucking its thumb (MPA, page 2, lines 14 – 19). How this

15    is similar to the angel with outstretched wings, carrying a heart in its arms, used by

16    Defendants Yan, begs the question. It isn't! The side by side comparison in Plaintiff's

17    moving papers does not help Plaintiff. The mark developed by Chow is distinctively

18    different than that developed by Plaintiff. The only similarity is the name "Angel" which,

19    let us not forget, was legally trademarked by Chow in the State of California. This is not a

20    strong mark of the type that warrants greater protection.

21    2.    Proximity or Relatedness of the Goods

22    Although the goods are both bathroom issues, Chow submits that they are in

23    distinctively different packaging, decreasing the likelihood of confusion in the marketplace.

24    Moreover, even though the products are both bathroom tissue, the important fact here is the

25    "marketplace" at issue. Chow's consumer is one who purchases products at discount stores

26    and close-out stores, similar to those set forth in Plaintiff's Supporting Declaration of

27    Darwin D. Wisdom. Mr. Wisdom states he purchased Defendants products at "Bargain

28    Empire" (Supra, p. 2, line 1 – 2) and "$1 Store +" (p. 2, line 3 – 8)

1

3. <u>Similarity of the ANGEL SOFT Trademarks and the "Angel mark"</u>

2
As set forth above, Defendants submit that there is no similarity outside of the use of

3
the word "Angel" in the products at issue. One is "Angel", the other "Angel Soft". Not

4
only are the fonts <u>different</u>, the pictures on the outside of the packaging are completely

5
different, i.e. a baby in a blanket, sucking its thumb vs. an angel with outstretched wings,

6
carrying a heart in its arms. As a result, the chances of confusion are unlikely.

7
4. <u>Actual Confusion</u>. Outside of an anonymous letter received by

8
Plaintiff, there is no evidence whatsoever of actual confusion. In fact, due to the

9
marketplace factors set forth below, and the difference in the packaging set forth above, the

10
likelihood of actual confusion is non-existent.

11
5. <u>Marketplace Factors</u>

12
This is, perhaps, Plaintiff's weakest argument. The marketing channels utilized to

13
market both products are completely different. Plaintiff's employ what is commonly

14
known as a first tie marketing approach in marketing its bathroom tissue. Plaintiff's sell its

15
products to well known, large retailers; i.e., "Wal*Mart, Target, Winn Dixie and

16
Walgreen's… " (MPA p.4, lines 15 – 18). Defendants Yan, on the other hand, market and

17
sell to second, mostly third tier retailers; i.e., Bargain Empire, $1 Store, etc., all individual

18
retailers selling bargain items, cost over-runs and close-outs. These are a very different type

19
of store than the one's Plaintiff routinely sells its products to.   As a result, there is little or

20
no likelihood that you will <u>ever</u> find Plaintiff's products and Chow's products on the same

21
shelf, or even in the same store.

22
6. <u>Types of Goods and Purchaser Care</u>

23
This is a moot issue inasmuch as the purchaser for Plaintiff's product is a different

24
type of purchaser than the one purchasing Chow's product.   One is a purchaser from the

25
big retailer – Wal*Mart, Target, etc. – the other is a purchaser at small, individually owned,

26
independent, neighborhood discount stores – Bargain Empire, $1 Store, etc.

27
7. <u>Likelihood of Expansion</u>

28
Again, this is a moot issue inasmuch as Chow has no plan to expand its product line

1  and, in fact, has ceased manufacturing and importing any products bearing the "Angel

2  mark".

3  　　　As set forth above, all factors taken together, or separately, simply do not support a

4  finding of likelihood of confusion between Plaintiff's products and Chow's product. There

5  is no evidence whatsoever to support Plaintiff's blatantly false claim that "Defendants

6  adopted duplicate marks, applied them to identical goods, and intended to trade off of

7  Georgia Pacific's goodwill among consumers of bathroom tissue products" (MPA, p. 17,

8  lines 13 – 15). In fact, the evidence establishes just the opposite. (See DAYC).

9  　　　　　　　　　　　　　　　　**V.**

10  　　**PLAINTIFF'S LIKELIHOOD OF SUCCESS ON IT'S REMAINING CLAIMS**

11  　　　Plaintiff's likelihood of succeeding on its other claims is unlikely given the problems

12  it has in establishing its underlying trademark infringement claim and its entitlement to a

13  preliminary injunction.

14  　　　　　　　　　　　　　　　　**VI.**

15  　　　　　　　　　　　**BALANCING THE HARDSHIPS**

16  　　　As more completely set forth in the accompanying Declaration of Allen Yan Chow,

17  the hardship, if any, is balanced in favor of Chow. Chow is a small importer of bathroom

18  tissue. The profit margins on each shipment from China is minimal when compared to the

19  cost of manufacturing and importing; approximately $10,000.00 profit per container, with

20  an investment of $200,000.00. Measuring this against the "hundreds of millions of dollars"

21  Plaintiff has generated, and continues to generate from the sale of its bathroom tissue"

22  (MPA p. 1, lines 9 – 10) it is obvious who will suffer most.

23  　　　Although Chow has ceased any further manufacturing and importing to the United

24  State of products bearing the "Angel mark", there still may be product in the stores of some

25  of the third tier retailers discussed above. There are, at best estimate, maybe ten (10) stores

26  that still have product bearing the "Angel mark". The cost for Chow to approach each of

27  these retailers, retrieve any remaining bathroom tissue bearing the "Angel mark", and

28  return all funds to these customers, would result in financial disaster for Chow. According

6

1   to Chow, all products bearing the "Angel mark" should be, more or less, out of the
2   marketplace by January 31, 2008 (DAYC p. 10, lines 6 - 7). Certainly, distribution of the
3   tissue paper that remains on the shelves of these discount stores would not harm Plaintiff in
4   any appreciable way. After all, Chow has been selling the "Angel mark" tissue for over
5   eight (8) years and it has had no affect on Plaintiff's profit margin or reputation in the public
6   marketplace. Plaintiff, itself, claims to have generated over $2 billion in sales between 2004
7   and 2006 and it is ranked second overall in total dollar sales for its tissue paper for year
8   ending September 8, 2007 (MPA p. 5, line 10 - 14). Clearly, Plaintiff has not been affected
9   by Chow's sale of the "Angel mark" tissue and will not be affected by the sale of the
10  remaining "Angel mark" bathroom tissue.

11          There is no question; the hardship Chow would incur in having to round-up the
12  remaining "Angel mark" tissue paper and reimburse its customers, is devastating compared
13  to the negligible or non-existent harm Plaintiff would suffer.

14                                          **VII**
15                                    **<u>CONCLUSION</u>**

16          Plaintiff has failed to sustain its burden in proving irreparable injury as a result of
17  Chow's conduct, or that it will suffer any kind of hardship if Chow's customer's are
18  permitted to distribute the remaining tissue paper that is currently in the market place. For
19  the reasons set forth above, Chow and Yan respectfully request that the temporary
20  restraining order be extinguished and a preliminary injunction denied.

21  Dated: January 11, 2008                          Respectfully submitted,

22

23                                                  _/s/ Wendy L. Slavkin_____
24                                                  WENDY L. SLAVKIN
                                                    Attorney for Defendants
25                                                  Allen Yan Chow and
                                                    Yan Wholesalers
26

27

28

                                            7

## DECLARATION OF ALLEN YAN CHOW

I, ALLEN YAN CHOW, declare as follows:

1.      I am a Defendant in the above-captioned matter, and the owner of Yan Wholesale. The matters stated herein are true of my own knowledge, I am competent to testify thereto, and would so testify if called upon to do so. I submit this Declaration in opposition to Plaintiff's motion for a preliminary injunction.

2.      Since 1998-1999, I have been manufacturing bathroom tissue in China for export to the United States, primarily for sale and distribution in California. The name I have consistently used on the tissue paper since 1998-1999 is "Angel", in the type and style as reproduced in Plaintiff's moving papers (See Plaintiff's Memorandum of Points and Authorities in Support of Ex Parte Application for Temporary Retraining Order, "MPA", page 2, lines 14 – 19 and page 7, lines 5 – 10).

3.      Prior to March 23, 2004, I, on behalf of Yan Wholesale, filed an application for registration of the trademark "Angel", with the following description:  baby angel with short curly hair, winking its left one eye, wings stretched, holding pink heart with both hands, with head band featuring top part of the body and head and wings. The Secretary of State accepted my application and on March 23, 2004, issued a Certificate of Registration of Trademark, bearing trademark No. 109928.    Attached hereto as Exhibit "A", and incorporated herein by this reference, is a true and correct copy of the Certificate of Registration of Trademark, with accompanying copy of the graphic depiction of the mark, issued by the State of California on March 23, 2004 (hereinafter, "Angel mark").

4.      Prior to service of the herein lawsuit, and based on my registered trademark, I believed I had every right to use the "Angel mark" on the bathroom tissue paper I was manufacturing and importing from China and had been doing so for approximately eight (8) years. At no time prior to service of the instant action did Plaintiff ever contact me and advise me that I was in violation of its U.S. Trademark, or otherwise.  It was only upon service of this action that I was first put on notice of Plaintiff's claims against me and my business.

8

1      5.     Plaintiff and its products had nothing whatsoever to do with my use and

2  eventual registration of the "angel mark". I choose that name because, in or about 1997, I

3  began both importing from China, and purchasing locally, ceramic figurines in the shape of

4  an Angel. I imported and purchased these figurines for re-sale to discount retailers. The

5  sale of these angel figurines was so popular with the consumer public that when I began

6  manufacturing and importing bathroom tissue, I decided on the angel logo as the

7  trademark. I had no idea of the existence of Plaintiff's trademarks and did not intentionally

8  adopt a mark similar to Georgia-Pacific's in an effort to trade upon the goodwill and success

9  of the Angel Soft® brand. I simply had experience that the consumer public liked angels

10  and that, therefore, they would be drawn to the angel on the outside packaging of my tissue

11  paper.

12      6.     Upon receiving Plaintiff's lawsuit, I immediately notified my Chinese

13  manufacturers and agents to cease manufacturing Angel tissue paper. A true and correct

14  copy of my fax to my Chinese manufacturers and agent is attached hereto as Exhibit "B"

15  and incorporated herein by this reference.

16      7.     As of this date, there is no more manufacturing or importing of bathroom

17  tissue from China, or anywhere else, bearing the "Angel mark". However, there were two

18  containers that were already shipped from China. I have diverted them from arriving in the

19  United States.

20      8.     Although I have has ceased any further manufacturing and importing to the

21  United State of products bearing the "Angel mark", there still may be product in the stores

22  of some of my customers and my customer's customers. The types of stores I sell to are, for

23  the most part, third tier stores. They are completely different from the types of stores

24  Plaintiff sells to and, therefore, attract a different type of consumer. These retailers are

25  independently owned, small discount stores that sell discounted goods, over-runs and

26  close-outs. I have no customers that are equal, or even similar to, Target, Wal*Greens or

27  Winn-Dixie. My best estimate is that maybe ten (10) stores still have product bearing the

28  "Angel mark".

1    9.    The cost for me to approach each of my customers, retrieve any remaining
2  bathroom tissue bearing the "Angel mark", and return all funds to these customers, would
3  be financially devastating to me.  My profit margin is very small on each shipment of
4  product. At a manufacturing and importing cost of $200,000.00 out-of-pocket per container,
5  I generate an approximate $10,000.00 profit.

6    10.    It is my sincere belief that all products bearing the "Angel mark" should be,
7  more or less, out of the marketplace by January 31, 2008.

8    I declare under penalty or perjury under the laws of the United States that the
9  foregoing is true and correct.

10    Executed this 13th day of January, 2008

12    _/s/ Allen Yan Chow_____
      ALLEN YAN CHOW

11

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10

EXHIBIT A



## State of California

## SECRETARY OF STATE

Trademark Reg. No. 109928  Class No. Int. 16
### CERTIFICATE OF REGISTRATION OF TRADEMARK

*I, KEVIN SHELLEY,* Secretary of State of the State of California, hereby certify:

That in accordance with the application filed in this office the TRADEMARK described below has been duly registered in this office on behalf of:

**Name of Applicant:**   Yan Wholesale
**Business Address:**   17534 Vacas Circle, Fountain Valley, CA 92708
**Date first used in California:**   August 21, 2002
**Date first used anywhere:**   Not provided
**Description of Trademark:**   ANGEL and baby angel with short curly hair, winking its left one eye, wings stretched, holding pink heart with both hands, with head band featuring top part of the body and head and wings
**Description of Goods on which the Trademark is used:**   Bathroom tissue, napkins, kitchen towels, hand towels
A copy, specimen, facsimile, counterpart or a reproduction of the mark is attached
**Date of Registration:**   March 23, 2004
**Term of Registration Extends to and Includes:**   March 23, 2014

IN WITNESS WHEREOF, I execute this certificate and affix the Great Seal of the State of California this 25th day of March, 2004.



P. 11

KEVIN SHELLEY
Secretary of State

**EXHIBIT A**

NP-54 A (REV 1-93)

Tips



**EXHIBIT A**

EXHIBIT B

To: Wendy

**YAN WHOLESALE**
17534 VACAS CIRCLE
F. V. CA 92708
12/22/2007

TO : ALL SUPPLIERS
FOOK WOO ASSORTED PAPER LO. LTD
SANJIAO PAPER MANUFACTURING CO. LTD
ZHONG SHAN ZHONGSHUN IMPORT & EXPORT CO.
NANNING NEW & HIGH ZONE IMP. & EXP. CORP. (agent)

Yan Wholesale USA
Effective 12/24/2007
Here is to notify all of our manufacturers and suppliers of all our products
Bearing the name ANGEL will be discontinued immediately.
We will advise any change in our policy in the future.

Sincerely,

Allen Yan Chow  ( Owner )

P. 13
**EXHIBIT B**

1       **DECLARATION OF WENDY L. SLAVKIN**

2   I, WENDY L. SLAVKIN, declare as follow:

3   1.  I am an attorney at law duly licensed to practice before this court and all

4 courts of the State of California.  I am the attorney of record for Defendants ALLEN YAN

5 CHOW and YAN WHOLESALE.  The matters stated herein are true of my own knowledge,

6 I am competent to testify thereto, and would so testify if called upon to do so.

7   2.  I submit this Declaration in opposition to Plaintiff's motion for a preliminary

8 injunction.

9   3.  On or about January 4, 2008, I emailed, faxed and mailed a letter to

10 Plaintiff's counsel, Stephen P. Swinton, advising him of the status of my client's continued

11 manufacturing and importing of the "Angel mark" products.  Specifically, I advised him of

12 the following:

13   a. That on December 22, 2007, the day after my client was served with the

14 lawsuit, he sent a fax to his manufacturers and agent in China advising them that there

15 would be no further manufacturing of any products bearing the name "Angel";

16   b. That there are two container shipments that were in transit from China

17 that contain "Angel" bathroom tissue,  scheduled to arrive on January 9 and 18, 2008, and

18 that they were sent prior to issuance of the TRO (although I am now advised by my client

19 that these two shipments have been diverted from entering the United States);

20   c.  That the out-of-pocket cost involved in each shipment was $200,000.00

21 and the estimated profit <u>for both shipments</u> was a total of $20,000.00.

22 I also included in my letter to Mr. Swinton a 3 page list of my client's customers that were to

23 receive product from Mr. Chow and the payment arrangements relative to same.  A true

24 and correct copy of that letter is attached hereto as Exhibit "C" and incorporated herein by

25 this reference.

26 //

27 //

28

1

2      I declare under penalty or perjury under the laws of the United States that the

3  foregoing is true and correct.

4      Executed this 11th day of January, 2008

5                                      /S/Wendy L. Slavkin_____

6                                      WENDY L. SLAVKIN

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15

EXHIBIT C

# WENDY L. SLAVKIN

### ATTORNEY AT LAW

11707 SUNSET BOULEVARD, SUITE 24, LOS ANGELES, CALIFORNIA 90049
TELEPHONE 310.476.1959   FACSIMILE 310.476.1939   E-MAIL: WLSLAVKIN@AOL.COM

January 4 2008

**SENT VIA FACSMILIE TRANSMISSION AND U.S. MAIL**
**858.523.5450**

Stephen P. Swinton, Esq.
LATHAM & WATKINS, LLP
12636 High Bluff Drive, Suite 400
San Diego, CA 92130-2071

> **RE:   Yan Wholesale adv. Georgia-Pacific Consumer Products LP**
> **USDC Case No. 07-CV-02390**

Dear Mr. Swinton:

As I previously advised you, the undersigned represents Yan Wholesale and Allen Chow relative to the above-referenced matter.

To reiterate what I already told you, my client does not want to litigate this matter. Mr. Chow had no idea he was infringing upon the trademarks of your client until he was served with the subject lawsuit. On December 22, 2007, the day after he was served with the lawsuit, he sent a fax to his manufacturers and agent in China advising them that there would be no further manufacturing of any products bearing the name "Angel". Unfortunately, there are two container shipments that are in transit from China that contain "Angel" bathroom tissue. They are scheduled to arrive on January 9 and 18, 2008. These were sent prior to issuance of the TRO. The out-of-pocket cost involved in each shipment is $200,000.00. The estimated profit for both shipments is a total of $20,000.00. My client is awaiting receipt of invoices from China that will reflect his cost of manufacturing and shipment. I will send these invoices to you as soon as I receive same. Clearly, the profit margin on this endeavor is very small compared to the out-of-pocket expense.

I have included with this letter a three (3) page list of my client's customers that was prepared by Mr. Chow. Some or all of these customers have already given Yan Wholesale deposits for the tissue paper in transit in the total approximate sum of $20,000.00. The balance is to be paid upon delivery. Included on this three (3) page list is one of the Defendants, Yes Wholesale. According to Mr. Chow, Defendant Rush Wholesale is a customer of Defendant Yes Wholesale. However, Mr. Chow has never sold to Defendant Yes Wholesale of Mexico, or Defendant John Yeh, and has no idea who this entity or individual is.

P. 16
**EXHIBIT C**

Stephen P. Swinton, Esq.
LATHAM & WATKINS, LLP
January 4, 2008
Page 2

To try and stop the distribution of the product in transit is a monumental, if not impossible, as well as extremely costly, task. As stated, after the January 18, 2008, delivery, there will be no further "Angel" products entering this country, or anywhere else for that matter. All production and manufacturing of "Angel" tissue has ceased. Furthermore, the California trademark at issue will be cancelled forthwith. Additionally, what my client proposes is as follows:

       1.     Allow the remaining "Angel" product to enter the United States and be distributed and sold as previously arranged;

       2.     Provide your client with a full accounting of all funds paid and received from the remaining two (2) shipments; and

       3.     Turn-over all profits from the remaining two (2) shipments to your client, in the sum of approximately, and at least, $20,000.00.

Mr. Chow advises me that, with respect to the two (2) remaining shipments, all product should be sold, and off the shelves, no later than January 31, 2008.

Please advise me if we can resolve this matter as outlined above. If you need any further information or documentation, please advise me accordingly and I will endeavor to provide it to you forthwith. If we cannot resolve this matter, I will seek a brief continuance of the hearing set for Monday in light of my recent retention.

Thank you for your anticipated courtesy and cooperation.

Very truly yours,

WENDY L. SLAVKIN

WLS/mf
enclosures
cc: client (via email)
    David K. Demergian, Esq. (via email)

**EXHIBIT C**